IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DARIUS SMITH,** | ) |
| | ) |
| Plaintiff**,** | ) |
| | ) |
| v. | ) Case No.: 4:20-cv-562-MTS |
| | ) |
| **GENERAL MOTORS,** | ) |
| | ) |
| Defendant**.** | ) |

**DEFENDANT GENERAL MOTORS LLC'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.   OVERVIEW**

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("***Opposition***")[1] and Response to Defendant's Statement of Uncontroverted Material Facts ("***Response to SUMF***") are deficient as to both law and facts, and do not support denial of Defendant's Motion for Summary Judgment. *See* Opposition [Doc #59]; Response to SUMF [Doc #57]. The Opposition lacks factual support from the record which would justify the wide-sweeping legal conclusions contained therein. *Id.* In fact, Plaintiff's filings do not contain a single citation to the evidentiary record.[2] The record is clear, nonetheless, that Plaintiff has not suffered any adverse

---

[1] Plaintiff also filed a document entitled "Plaintiffs Response to Defendants Motion for Summary Judgment," which purports to respond to Defendant's Motion for Summary Judgment. *See* [Doc #56]. Plaintiff does not cite a procedural rule that allows such a pleading, and Defendant is unaware of any federal or local rule that requires a formal response. To the extent a formal response is required, GM denies all factual and legal arguments contained in the filing.

[2] Plaintiff attached three exhibits to his Opposition (Exhibits A, B and C), which are a compilation of prior deposition exhibits (some of which were incorporated into Defendant's SUMF). *See* [Doc # 59-1], [Doc #59-2], [Doc #59-3]. Plaintiff's Exhibits A, B and C are not properly in the record and should not be considered by the Court. Plaintiff did not authenticate or include them in a Statement of Undisputed Facts, and Plaintiff has provided no foundation for adding these documents

action (he remains employed by GM through this date) or any cognizable discrimination, harassment or retaliation of the level necessary for supporting such claims under the Missouri Human Rights Act (MHRA).

Throughout the Opposition, Plaintiff relies on the wrong legal standard (arguing the "contributing factor" standard as opposed to "motivating factor standard applicable to claims for discrimination under the MHRA after August 28, 2017), and he relies exclusively on unsupported factual allegations in support of his claims. Plaintiff argues completely new (and unsupported facts) that were never raised in the Charge, prior pleadings, discovery or Plaintiff's deposition. And more egregiously, Plaintiff repeatedly relies on facts that he flatly denied in his own sworn deposition testimony. Plaintiff did not incorporate facts from the evidentiary record into his Opposition, and he has not put forth any evidence upon which this Court can rely to justify denial of Defendant's motion for summary judgment. For these reasons, and those explained in greater detail herein, Defendant respectfully requests this Court grant its Motion for Summary Judgment as to all counts of Plaintiff's Complaint.

## II. PLAINTIFF'S "FACTUAL SUMMARY"

Plaintiff's Opposition contains a "Factual Summary" that includes a series of unsupported facts, along with the overall conclusion that "there are several issues of material fact that need to be addressed by the trier of fact." *See* Opposition at 1[3]. Consistent with the Opposition as a whole, Plaintiff does not identify for the Court the ***specific*** "material facts" that are allegedly in dispute nor

---

to the existing record established by Defendant's SUMF. Moreover, with the exception of Exhibit B (which is marked and referenced as "Exhibit P"), the exhibits are not mentioned in Plaintiff's Opposition. *See also* Fed. R. Civ. P. 56(e).

[3] Plaintiff's Opposition does not contain page numbers so Defendant relies on the page number contained in the ECF header imprinted when the document was electronically filed.

does he provide any evidentiary support from the record to justify his conclusion that there are facts which are actually "in dispute." *Id.*

In fact, many of the so-called "facts" in this Section are squarely contradicted by Plaintiff's own deposition testimony. Thus, Plaintiff is relying on allegations that he knows to be untrue. For instance, Plaintiff argues that he was repeatedly required to perform tasks of other employees because he is Black. Yet, in his deposition, he testified that he was asked on a single occasion to perform a 2-person job alone; and when asked if he felt he was asked to do the extra work because he is Black, Plaintiff responded "No, ma'am, I wouldn't say that." *See* SUMF ¶¶ 90 – 97. He admitted that being asked to perform other jobs when GM was low on manpower had nothing to do with his race. *See* SUMF at ¶¶ 88 – 89. He also admitted that collecting empty containers was a task that was required of all employees - - - both Black and White. *See* SUMF at ¶¶ 80 – 81.  He admitted that he was never told to stop filing complaints or he would be disciplined or fired. *See* SUMF at ¶ 123. And, he admitted that he did not suffer any retaliation after he filed his Charge of Discrimination on June 17, 2019. *See* SUMF at ¶ 133. Despite having these key admissions through his own sworn deposition testimony, Plaintiff's Opposition relies, in large part, on old, debunked allegations that are now known to be false.

Further, Plaintiff did not file his own "Additional Statement of Uncontroverted Material Facts" (with citation to the record) to support any of the "new" factual averments contained in his Opposition and the additional exhibits attached thereto. Based on Plaintiff's failure to comply with Federal Rule 56(e) and Local Rule 4.01(E) requiring that all facts be supported by citations to the evidentiary record[4], this Court should disregard all unsupported allegations contained in Plaintiff's

---

[4] By separate motion, Defendant addressed the severe deficiencies in Plaintiff's Response to SUMF, which does not comport with the requirements of Local Rule 4.01(E) and results in the

3

"Factual Summary," and should further disregard every factual allegation in the Opposition that is not properly supported by citation to the record. *See Deichmann v. Boeing Co.*, 35 F. Supp.2d 1166, (E.D.Mo. 1999) ("Plaintiffs' mere allegations that issues remain in dispute are insufficient to meet the requirements of Local Rule 4.01(E), and they are deemed to have admitted all facts which were not specifically controverted." *citing Ruby v. Springfield R–12 Pub. Sch. Dist.*, 76 F.3d 909, 911 n. 6 (8th Cir.1996)). Defendant's Motion for Summary Judgment should be granted because all facts in support thereof are deemed admitted, and Defendant has articulated sufficient legal bases to support judgment as a matter of law as to all claims.

### III.   ARGUMENT

#### A.   PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE LIMITATIONS PERIODS MANDATED BY THE MISSOURI HUMAN RIGHTS ACT.

##### i.   **GM is entitled to Summary Judgment because Plaintiff Did not File a Charge of Discrimination within 180 days of the Alleged Wrongful Conduct.**

The MHRA requires discrimination charges to be filed within 180 days of the alleged discrimination. *See* Rev. Stat. Mo. § 213.075. Plaintiff summarily concludes that his claims are not barred by the applicable limitation period, yet he neglects to support his conclusion with any evidence or applicable legal precedent. *See* Opposition, generally. The crux of Plaintiff's contention appears to be that his Charge contained a typographical error as to the latest date of discrimination that resulted in the inclusion of the date[5] June 8, 2017 (the date of the alleged Safety Vest Incident), instead of June 8, 2019 (which was 7 days before the date on the Charge). *See* Opposition at 4. Plaintiff testified

---

admission of every fact set forth in Defendant's SUMF. *See* Defendant's Motion to Deem Admitted all Facts in GM's SUMF and Memorandum in Support thereof [Doc #62], [Doc #63].

[5] The date at issue is in the box titled "Date(s) Discrimination Took Place," and located under the blank space below "Latest." *See* SUMF at ¶ 125. This is where Plaintiff was to insert the last date that discrimination took place. On his Charge, Plaintiff typed "06-08-2017." *See* Exhibit R.

4

in his deposition that he believes the Safety Vest Incident occurred on ***June 8, 2017***, which also corresponds to the date in his handwritten notes and the date recited in the Charge[6]. *See* SUMF at ¶¶ 47 – 48.

Importantly, this is the very first time the issue of mistake or typographical error was raised by Plaintiff. And, once again, Plaintiff makes a new factual allegation without any support from the evidence in the record. The Opposition states: "Plaintiff clearly intended to establish a continuing action of discrimination, harassment and retaliation beginning in May of 2017 and continuing over the course of his employment. Plaintiff intended to state that the latest date of discrimination took place on June 8, 2019. . ."[7] *See* Opposition at 4. Yet, the evidence in the record squarely contradicts this new theory.

The June 2019 Notes prepared by Plaintiff (and allegedly given to his Union Representative) are a ***summary of past incidents***, not new incidents that occurred in June 2019; that is clear from the description of events that matches perfectly with past incidents that occurred in 2017 – 2018. *See* SUMF ¶¶ 36 – 38; Exhibit N. There is not a single incident alleged by Plaintiff that occurred in or

---

[6] Based on evidence in the record, it is likely that Plaintiff is mistaken about the date of the Safety Vest Incident, which probably occurred on April 13, 2018. Regardless of whether the incident occurred on June 8, 2017 or April 13, 2018, both dates are more than 180 days before he filed his Charge (there is no dispute that the Safety Vest Incident did not occur in June 2019). But, the conflicting dates provided by Plaintiff raises the more serious question as to the accuracy of Plaintiff's recall of events and his handwritten notes, which contain inconsistent versions of the facts and, thus, could not have been created contemporaneously with events as Plaintiff now claims.

[7] The Charge has an "X" in the box titled "Continuing Violation," but the last date the alleged discrimination took place is more than two years prior to the date on the Charge. Thus, if the discrimination was truly "continuing," you would expect that the "latest date of discrimination" would state "present" or "on-going." Alternatively, "The Particulars" section would include incidents that occurred after June 8, 2017 but before the date on the Charge. *See* Exhibit R. Instead, there is nothing in the Charge to provide notice that there was any act of discrimination after June 8, 2017 to render it "on-going" or "continuing." *Id.*

about June 2019. So, for Plaintiff to now claim the date in the Charge is a typographical error is nothing more than an attempt to avoid summary judgment. During Plaintiff's deposition (that lasted for approximately seven hours), he never one time mentioned that the date in the Charge was a typographical error, despite being specifically asked if there was anything inaccurate within the Charge[8]. Nor did Plaintiff mention any discriminatory or harassing incidents that occurred in or about June 2019. Instead, Plaintiff's deposition testimony is consistent with his belief that the Safety Vest Incident occurred on June 8, 2017, which is precisely the date recited in the Charge as the last date of discrimination.

Further, Plaintiff filed his Complaint on March 11, 2020, and there is not a single allegation contained therein that relates to events in June **2019**. *See* Complaint [Doc #1-1]. If there was discrimination in June 2019, it should have been included in the Complaint he filed with the Court less than a year later. Similarly, the Complaint makes no mention that the Charge contains an error in the dates or that the discrimination was on-going or continuing. *Id.* There is simply no alleged incident that occurred on or about June 8, **2019.**

Plaintiff also claims (without any legal citation) that the handwritten notes allegedly given to GM provided "proper notice" of his claims, and thus inclusion in the Charge was unnecessary. *See* Opposition at 4. Importantly, Plaintiff did not attach the handwritten notes to his Charge. *See* Exhibit R. Plaintiff now wants the Court excuse his failure to include relevant facts in his Charge that were well within his personal knowledge, and which were memorialized in his own handwritten notes.

---

[8] "Q: Can you take a minute and look over it [referring to the Charge], and let me know if there's anything in the charge that you think has changed or is no longer accurate.
A: I would say that I wasn't hired as a forklift driver. That wasn't --- I did not like go there, like they didn't hire me for no forklift driver, so I don't know if that's accurate or not." *See* Pl. Dep. at 172:14-20.

Plaintiff has not provided any excuse or explanation for why all relevant facts were not included in the Charge (or in the Complaint). Instead, he wants to shift the burden to GM to infer the full scope of his complaints of discrimination based on a series of disjointed, handwritten notes that Plaintiff cannot testify with any degree of certainty were actually provided to an agent for GM before he filed his Charge. In fact, the only Awareline Complaint filed by Plaintiff to which he attached notes was submitted on June 17, 2019, two days *after* he filed his Charge of Discrimination. *See* SUMF ¶¶ 118 – 119; Exhibit R.

Here, Plaintiff filed his Charge of Discrimination on **June 15, 2019**. *See* SUMF at ¶ 125; Exhibit R. The last date within the limitations period is December 17, 2018, which is 180 days before June 15, 2019 (the date the Charge was filed). Accordingly, all events that occurred on or before December 17, 2018 are barred by the applicable 180-day limitation period. There is nothing in the record to support Plaintiff's new argument that the date on the Charge should have read June 8, 2019, a completely random date that corresponds to no event of significance in the record; in fact, there is significant evidence in the record to support that such a claim is false and nothing more than a last-ditch effort to bring his claims within the limitations period. Accordingly, there are no incidents that fall within 180 days of the date the Charge was filed, and thus all claims are time barred.

      **ii.**    **GM is Entitled to Summary Judgment Because Plaintiff did not File this Case within Two Years after the Alleged Wrongful Conduct.**

The MHRA imposes a second deadline as well, *i.e.*, a lawsuit alleging discrimination must be filed within two years of the complained-of discrimination. *See* Mo. Rev. Stat. § 213.111.1. Plaintiff concludes (without supporting evidence from the record) that "Plaintiff is not barred because the alleged activity is within the two-year period." *See* Opposition at 7. Plaintiff's argument, here, appears to be that GM continued to investigate his complaints into the two-year period before he filed his lawsuit so that somehow salvages his claims. Plaintiff provides the Court with no legal support for

7

this argument. In order for Plaintiff's claims to be within the two-year limitation period, at least one of the occurrences underlying his causes of action must have occurred on or after March 11, 2018. But again, Plaintiff has not alleged any incidents within that time, and the last incident of discrimination alleged in the Charge occurred on June 8, 2017.

Instead, Plaintiff points to his June 2019 Notes attached to the June 17, 2019 Awareline Complaint that simply repeat prior incidents that occurred years earlier. *See* SUMF ¶¶ 37, 118. Continuing to rehash the same incidents over and over again is not akin to a new incident that would restart the limitations clock. Thus, Plaintiff writing up a summary of past incidents and allegedly giving it to GM in June 2019 is not a new "occurrence" under the MHRA such that Plaintiff gets to restart the two-year clock each time he mentions a past incident. Importantly, Plaintiff has not alleged that GM's response to the June 2019 Note somehow constituted a discrete act of discrimination. In fact, when asked in his deposition, he could not recall a single instance of discrimination, harassment, or retaliation that occurred in June 2019, which is also when he filed his Charge. *See* SUMF at ¶¶ 133, 137. As such, all of Plaintiff's claims are barred by the applicable two-year limitation period, and GM is entitled to judgment as a matter of law as to all counts of Plaintiff's Complaint.

    **B.**    **GM IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I, II AND III ALLEGING DISCRIMINATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON RACE UNDER THE MHRA.**

        **1.**    **<u>Plaintiff has not satisfied the elements of a *prima facie* case of discrimination, harassment and hostile work environment under the MHRA.</u>**

Plaintiff's Opposition provides the Court with a handful of broad-sweeping legal propositions, from which he summarily concludes that "Plaintiffs claims are sufficiently actionable discrimination and harassment under the MHRA." *See* Opposition at 10. But, time and again, Plaintiff fails to provide the Court with specific facts supported by the record that justify denial of summary judgment based

on the legal precedent that he cites. *Id.* Plaintiff cites the incorrect legal standard, and provides outdated case law and arguments related to the "contributing factor" standard (instead of the "motivating factor" standard), which is no longer the proper standard for MHRA claims arising after August 28, 2017. *See* Rev. Stat. Mo. §§ 213.010(2), 213.055; *see also Eivins v. Missouri Dept. of Corrections*, 636 S.W.3d 155, 164 (Mo. App. W.D. 2021).

Plaintiff further argues that "Defendant incorrectly focuses on the requirements set forth for Title VII claims" presumably because Defendant cited cases that involve both MHRA and Title VII issues. *See* Opposition at 11. However, it is well-settled that "[w]hen reviewing cases under the [MHRA, courts] are guided by both Missouri law and any federal employment discrimination (*i.e.*, Title VII) case law that is consistent with Missouri law." *Lampley v. MCHR*, 570 S.W.3d 16, 22 (Mo. banc 2019). Thus, this Court can properly consider cases involving both MHRA and Title VII issues because the legal standards are consistent. *Id.*

Plaintiff has not satisfied the elements of a *prima facie* case for discrimination or harassment based on his race. Plaintiff's claims are premised on the aggregate of allegedly discriminatory conduct that Plaintiff claims resulted in a hostile work environment. But here, Plaintiff has failed to establish that the allegedly discriminatory and harassing conduct was ***because of his race*** or that it was sufficiently severe or pervasive to alter the conditions of his employment. For the reasons discussed below, Plaintiff's claims do not rise to the level of actionable discrimination or harassment under the MHRA, and summary judgment is proper.

> **2. The conduct alleged by Plaintiff is not sufficiently severe or pervasive as evaluated under a "reasonable person" standard to alter a term, condition or privilege of his employment.**

Plaintiff concedes that he must prove that Defendant's alleged conduct was sufficiently severe or pervasive to alter a term, condition or privilege of employment in order to prevail on his claims. *See* Opposition at 10. Yet, he fails to provide any evidence to support such a finding. Instead, he

9

simply concludes "[t]here is no dispute that he complained of numerous actions by members of management that he deemed discriminatory and harassing thus creating a hostile work environment. Plaintiff has properly alleged that his race was the contributing factor in the harassment. Plaintiff has also alleged that his employment was affected by the harassment." *See* Opposition at 11. While Plaintiff's argument is not totally clear, he appears to argue that, his past complaints about certain conduct establish that <u>subjectively</u> he believed the conduct was offensive, and once he established the subjective component, the jury should be permitted to decide whether the alleged conduct was <u>objectively</u> offensive. *See* Opposition at 13.

Plaintiff concedes that he must establish both objective and subjective components of alleged discrimination/harassment; that is, (1) that a reasonable person would find the working conditions hostile due to the discriminatory or harassing conduct (objective), and (2) that the plaintiff actually perceived the environment as abusive (subjective). *See* Opposition at 13; *see also Harris v. Forklift Sys.*, 510 U.S. 17, 21–22, 114 S.Ct. 367 (1993). But, Plaintiff conflates the concepts of complaining about behavior that he perceives to be subjectively offensive vs. proving facts from which a reasonable person could conclude the behavior was sufficiently severe or pervasive to impose liability under the MHRA. Plaintiff's subjective belief as to the severity of the conduct is but one part of the required proof to prevail on his claims. To get the jury, Plaintiff must also come forward with evidence that supports <u>both</u> the subjective and the objective components of the proof required to support his claims.

Plaintiff wrongly claims that, once he establishes that he subjectively viewed the conduct as offensive, "the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *See* Opposition at 13. In other words, to survive summary judgment, plaintiffs need only provide their own subjective, self-serving testimony that they were offended, and at that point, the

10

case must be sent to the jury. That is simply not the law in Missouri or the Eighth Circuit, and it completely ignores the objective component to a harassment claim.

Courts in Missouri and the Eighth Circuit have repeatedly made determinations as to the legal sufficiency of claims for harassment and discrimination. Defendant cited numerous instances far more severe than those at issue in this case where the court entered (or upheld) summary judgment for the employer. *See e.g. Willis v. Rock Hill Mechanical Corp.*, 2021 WL 4476740, at *4 (E.D.Mo. 2021) (summary judgment was proper despite evidence that a co-worker made a racially charged comment that included a reference to Michael Brown, there was racial graffiti on the bathroom walls, there were "racial tensions" in the workplace, and that a noose was found at a worksite); *May v. Special Admin. Board of School Dist. Of City of St. Louis*, 2021 WL 3268351, at *10 (E.D.Mo. 2021) (summary judgment proper upon finding that the comments at issue were offensive but "not so severe or pervasive to permeate the workplace."); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing the denial of summary judgment and "conclude[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis."); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks, made directly to plaintiff, once a month for two years by owner and operators, was insufficient to render the workplace objectively hostile); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981) ("'More than a few isolated incidents of harassment must have occurred. Racial comments that are merely part of the casual conversation, are accidental, or are sporadic do not trigger Title VII's sanctions.'" *citing EEOC v. Murphy Motor Freight Lines, Inc.,* 488 F.Supp. 381, 384 (D.Minn. 1980).

Relying on the *Bram* decision, Plaintiff concludes that the actions allegedly taken against him by GM were akin to those in *Bram* because "Smith was subjected to threats of termination and

11

discipline, yelled and cursed at, required to shoulder additional duties, denied privileges that white employees receive, and an actual assault by a Team Leader." *See* Opposition at 12. This is not merely summary of the facts but is instead the totality of the so-called factual evidence provided to the Court. In fact, the newly-added allegation that Plaintiff was "denied privileges that white employees received" is not found anywhere in the prior evidentiary record. Furthermore, Plaintiff also includes the new theory that he has not resigned to this point "out of fear that he cannot obtain another position of equal pay." *See* Opposition at 12. Here, Plaintiff has not provided the Court evidence of any incidents that are sufficiently severe or pervasive to support liability under the MHRA (either individually or taken as a whole). Precedent from both Missouri and the Eighth Circuit require more than a mere showing that a plaintiff was subjectively offended by behavior in order to get to the jury. It is well within the purview of this Court to decide that no reasonable person could find that the alleged conduct is sufficiently severe and pervasive as a matter of law.

### 3. Plaintiff has not alleged an adverse impact on his employment status as a result of the alleged discrimination and/or harassment.

Once Plaintiff proves that the alleged conduct was sufficiently severe or pervasive by both the objective and subjective standards (which he has not done here), Plaintiff concedes that he must also prove that the allegedly discriminatory act had an adverse impact on Plaintiff's employment before it becomes actionable. *See* Opposition at 14; *see also Jamerison*, 2022 WL 950861, *5, *citing Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019) (quoting *Kader v. Bd. of Regents of Harris-Stowe State University,* 565 S.W.3d 182, 189 (Mo. banc 2019)). Yet, he has not pointed to any changes in the terms or conditions of his employment. Instead, he theorizes (again with no support from the evidentiary record) that he "remained employed at GM under duress. . . [and] doubts his ability to obtain alternative employment making a similar wage." *See* Opposition at 14.

12

Plaintiff argues that he need not allege a specific tangible impact on his employment, but instead, it is for the jury to decide whether the alleged harassment/discrimination resulted in an adverse impact on his employment. *See* Opposition at 14. In support of his legal theory, Plaintiff relies on Missouri Code of State Regulations related to "Employment Practices Related to Men and Women," more particularly, the section which addresses "harassment on the basis of sex." *See* Opposition at 14, citing 8 CSR 60-3.040(17)(D)(3). Plaintiff does not have any claims for sex discrimination or sexual harassment under the MHRA, nor does he cite any cases explaining why this particular regulation is applicable to his claims in this case. *Id.* The cited Code section is inapplicable in this case. *Id.*

Plaintiff relies on his own supposition that he was forced to miss days of work due to the anxiety created by the discrimination and harassment in the workplace. *See* Opposition at 14. But, the record is devoid of any evidence that links his time off work to a particular medical condition (anxiety or otherwise) or connects the alleged medical condition to his employment with GM[9]. Plaintiff argues that he suffered "financial distress that missed wages created," yet there is also nothing in the record to support Plaintiff's argument that he "missed wages," and if he did, the amount and cause of the "missed wages." In responding to a motion for summary judgment, Plaintiff may not rest upon mere allegations or denials in his pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, he must set forth specific facts showing sufficient evidence to allow a verdict in his favor. *Id.* at 249. In opposing a motion for summary judgment, the court is not required to "credit bald

---

[9] There is nothing in the record to substantiate that "Plaintiff was forced to miss numerous days of paid work due to the anxiety caused by the discrimination and harassment that created the hostile work environment." *See* Opposition at 14. While some of Plaintiff's medical records were produced during discovery, those records were not made a part of evidentiary record related to this Motion.

13

assertions, periphrastic circumlocutions, unsupportable conclusions", and the like. *Crest Constr. II, Inc. v. On Time Auto*, 2010 U.S. Dist. LEXIS 88798, *4 (W.D.Mo. 2010). Here, Plaintiff has not provided the Court with any basis whatsoever to deny summary judgment. Instead, this Court should follow established legal precedent that requires Plaintiff provide evidence that the alleged discrimination/harassment caused a material change in the terms or conditions of his employment, which he has not done in this case.

      C.      **GM IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV ALLEGING RETALIATION UNDER THE MHRA.**

Plaintiff's claim for retaliation as alleged in his Complaint is based upon two distinct events: (1) complaining about "a Nazi sign placed on a door in the facility" and (2) "filing an EEOC Complaint." *See* Complaint at ¶ 42. Now, in response to Defendant's motion for summary judgment, Plaintiff has inflated his allegations to include that "he suffered retaliation by at least two [Group Leaders] and additional supervisors," that he was told by management "not to file any more complaints," and he was "admonished publicly for his use of FMLA." *See* Opposition at 15. He now also claims that he was also given extra work assignments, and was subjected to "excessive monitoring" in retaliation for his prior complaints. *Id.* Plaintiff has had the multiple opportunities to expound on the alleged incidents of retaliation (*i.e.* the Particulars section of his Charge, the allegations in his Complaint, answers to interrogatories, and his sworn deposition testimony). Yet, many of the "facts" upon which Plaintiff now relies have never been mentioned or have been specifically refuted by Plaintiff's own testimony.

For instance, Plaintiff admitted in his deposition that he was never told he would be disciplined or terminated if he continued to file complaints/grievances. *See* SUMF at ¶ 123. To the contrary, Plaintiff admits that he was told that he and his White partner would have to be separated if they could not get along. *See* SUMF at ¶ 121. That is very different from what Plaintiff is now claiming as

14

retaliation. Further, Plaintiff has never mentioned being "admonished publicly for his use of FMLA." Such an allegation is not in his Charge, the Complaint, and was not mentioned in his 7+ hour deposition. This is yet another example of Plaintiff creating new facts (with no evidentiary support whatsoever) to avert summary judgment.

Despite specifically pleading in his Complaint and arguing in his Opposition that GM retaliated against Plaintiff after he filed a Charge with the EEOC, in his deposition, Plaintiff was not able to identify a single instance of retaliation that occurred on or after June 15, 2019 (the date he filed the Charge). *See* SUMF at ¶ 133. When discussing the retaliation claim during his deposition, the only event mentioned by Plaintiff was his report to Thornhill that he saw a swastika scratched in the paint of one of GM's Assembly Plant doors. *See* SUMF at ¶ 78. Plaintiff's Opposition blatantly ignores his own sworn testimony, and continues to perpetuate debunked claims that Plaintiff simply cannot prove.

Here, there is no evidence that anyone at GM "retaliated" against Smith for engaging in any protected activity. In fact, the record reveals the opposite to be true. Despite Smith's continued and on-going pattern of making exaggerated claims of discrimination and harassment based on benign workplace conduct, he has continued to remain employed by GM to this day. He has no discipline on his record, and he continues to earn all pay and benefits afforded to all other UAW employees. There is nothing from which to conclude that Plaintiff has suffered any form of retaliation during his employment with GM.

### IV.    CONCLUSION

For the reasons set forth herein, GM requests this Court enter judgment as a matter of law as to all counts of Plaintiff's Complaint. There is no basis upon which to conclude that any of the alleged conduct rises to the level of actionable discrimination, harassment or retaliation under the MHRA. Moreover, Plaintiff's claims are wholly lacking in merit, and some are false and contradicted by

Plaintiff's own admissions. Defendant has expended significant time and resources responding to claims that Plaintiff knows to be untrue based on his own sworn deposition testimony. Defendant respectfully requests judgment in its favor as to all claims, including an award of costs and attorneys' fees, and all other appropriate relief based on these circumstances.

>Respectfully submitted,
>
>Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
>
>/s/ *Melissa M. Pesce*
>James M. Paul, #44232MO
>Melissa M. Pesce, #46814MO
>7700 Bonhomme Avenue, Suite 650
>St. Louis, MO  63105
>Telephone:  314.802.3935
>Facsimile:  314.802.3936
>james.paul@ogletree.com
>melissa.pesce@ogletree.com
>
>***Attorneys for Defendant General Motors LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2022, the foregoing was electronically filed with the Court service was made through the electronic filing system to:

Aryka N. Moore, Esq.
Weathers Law LLC
462 North Taylor, Suite 105
St. Louis, MO 63108

*Attorney for Plaintiff*

>/s/ *Melissa M. Pesce*
>Attorney for Defendant General Motors