UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARIUS SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-562-MTS |
| | ) |
| GENERAL MOTORS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment, Doc. [51], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's four-count Petition, Doc. [5], asserting claims under the Missouri Human Rights Act ("MHRA"). For the reasons set forth below, the Court grants Defendant's Motion.

Before addressing the several procedural and substantive issues raised in this Motion, the Court notes Plaintiff's failure to litigate. Plaintiff failed to "set forth specific facts" or any evidence *at all* in opposition to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, throughout his Opposition, Plaintiff relied exclusively on unsupported factual *allegations* in support of his claims. *See, e.g.*, Doc. [59] at 11, 14, 15 (using language like "Plaintiff has properly *alleged*" or "Plaintiff specifically *alleges*") (emphasis added). Plaintiff "may not merely point to unsupported self-serving allegations" but must, on a motion for summary judgment, "substantiate" his allegations with "sufficient probative evidence" that would permit a finding in his favor. *Reed v. City of St. Charles*, 561 F.3d 788, 791–92 (8th Cir. 2009). Plaintiff's Opposition provides the Court with a handful of broad-sweeping legal propositions[1] from which

---

[1] Also, notably, Plaintiff uses the wrong legal standard, arguing the "contributing factor" standard as opposed to "motivating factor" standard applicable to claims for discrimination under the MHRA after August 28, 2017. *See,*

1

he summarily concludes his claims are sufficiently actionable under the MHRA.  "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 578 (8th Cir. 2006).  Plaintiff has not put forth any evidence upon which this Court can rely to justify denial of Defendant's motion for summary judgment.

Moreover, both in his Opposition, Doc. [59], and so-called "fact" section, Doc. [57], Plaintiff did not incorporate facts from or citations to the evidentiary record.  Fed. R. Civ. Pro. 56(c), (e) (requiring facts be supported by evidentiary record); L.R. 4.01(E) (same).  Sometimes, Plaintiff even argued completely new (and unsupported) facts that were never raised in his charge of discrimination, prior pleadings, discovery, or deposition.  And more egregiously, Plaintiff repeatedly relied on facts he flatly denied in his *own* sworn deposition testimony.

Plaintiff also failed to controvert Defendant's Statement of Material Facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this District.  Fed. R. Civ. Pro. 56(c)(1); L.R. 4.01(E); *see* Doc. [57].  In fact, Plaintiff completely failed to respond to 100 of Defendant's 140 factual assertions.[2]  Accordingly, as both the Federal and Local Rules provide, the Court deems Defendant's facts as admitted.[3]  Fed. R. Civ. Pro. 56(e)(2) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . .

---

*e.g.*, Doc. [59] at 10-12 ("Plaintiff has properly alleged that his race was the *contributing* factor in the harassment.") (emphasis added).

[2] Plaintiff's Response to Defendant's Statement of Material Facts ("SOMF") consists of 36 numbered paragraphs that do not correlate in any way to the numbered paragraphs contained in Defendant's SOMF. *See* Doc [57].  In three numbered paragraphs, Plaintiff stated he "concurs with" the factual statements in 40 of Defendant's SOMF. *Id.* ¶ 1 (1–23), ¶ 4 (26–38), ¶ 7 (41–44).  Plaintiff does not address the other 100 SOMF, did not properly indicate that a genuine issue existed, nor cite to the record supporting a contradiction.  Instead, the remaining 33 paragraphs in Plaintiff's Response contain new, unsupported factual allegations with *no citation to evidence in the record*. *See id.* ¶¶ 2–3, 5–6, 8–36.  Notably, majority of the new factual allegations begin with statements like "Plaintiff contends" or "Plaintiff asserts."

[3] Defendant filed a Motion to Deem Admitted All Facts In Defendant's Statement Of Uncontroverted Material Facts Pursuant To Rule 56(E) and to Strike Plaintiff's Unsupported Facts. *See* Doc. [62].  Plaintiff filed *no* response or opposition to the Motion.  The Court grants this Motion.

2

consider the fact undisputed for purposes of the motion."); L.R. 4.01(E) (stating "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"); *see also Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014) (explaining if the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), "a district court will not abuse its discretion by admitting the movant's facts"); *Benford v. Schneider Nat'l Carriers, Inc.*, 4:19-cv-550-MTS, 2021 WL 3033346, at *2 (E.D. Mo. July 19, 2021) (deeming "several" of opposing-party's factual submissions as uncontroverted where party alleging employment discrimination "failed to respond" to the particular "factual assertions," in violation of Local Rule 4.01(E)), *aff'd,* 21-2717, 2022 WL 97108 (8th Cir. Jan. 10, 2022); *Jenkins v. N. Cnty. Gen. Surgery*, 4:20-cv-01415-SRC, 2022 WL 3107231, at *1 (E.D. Mo. Aug. 4, 2022) (deeming all facts from the moving party's Statement of Uncontroverted Material Facts admitted because non-moving plaintiff failed to respond to the moving party's facts (citing L.R. 4.01(E))). The Court will thus set out the undisputed and relevant factual background as supplied by Defendant in its Motion for Summary Judgment and Statement of Material Facts.

**I.    BACKGROUND**

This case arises from Plaintiff Darius Smith's employment with Defendant General Motors ("Defendant or "GM") and his allegations of unlawful discrimination, harassment, and hostile work environment based on Plaintiff's race, as well as retaliatory conduct by GM employees. Plaintiff is an African American who currently works at GM as a material handler in a GM assembly plant. In his position at GM, Plaintiff drives a forklift, works on the dock, and unloads trucks carrying parts being delivered to the plant.

Since his employment began in 2015, Plaintiff has complained on numerous occasions

about workplace conduct he believed to be discriminatory and/or harassing.  Plaintiff explained the first time he experienced any form of harassment at GM was on May 15, 2017, when Plaintiff asked Laura, another hourly union co-worker, for a box cutter, and Laura allegedly said that she would ask her friend to fire Plaintiff if he asked her again for a box cutter.  Doc. [52] ¶¶ 39–44.  Later, in 2018,[4] Plaintiff described two separate incidents of harassment that involved his Group Leader, Tracy Cook ("Tracy"), throwing a safety vest at him and later, where Tracy "gave him the middle finger."  *Id.* ¶¶ 45–68.  Plaintiff's claims of racial discrimination and harassment also include more generic allegations about times he was asked to perform job-related tasks that he felt were "unfair."[5]  *See, e.g.*, *id.* ¶ 88.

Plaintiff's retaliation claim is based on his reporting of a swastika.[6]  Doc. [5] ¶ 42 (alleging in his Petition that retaliation began "ever since he complained about a Nazi sign placed on a door in the facility").  Plaintiff explained that a co-worker pointed out a swastika scratched in the paint of one of the facility doors.  Doc. [52] ¶ 70.  Plaintiff took a picture of the swastika and reported it to his supervisor, Gerald Thornhill ("Thornhill").  *Id.* ¶ 71.  Plaintiff did not believe the swastika was directed to him in any way, but he knew "it was something bad and it wasn't supposed to have been on the door inside the plant."  *Id.* ¶¶ 73–74 (quoting Doc. [52-20] at 125–26 (125:16–126:7)).  Plaintiff alleged his various supervisors, principally Thornhill and Dan Bold ("Bold"), retaliated

---

[4] Plaintiff provides no affirmative date from which these events transpired.  However, the record shows the safety vest incident occurred on April 13, 2018.  Doc. [52] ¶ 49 (GM Plant Medical Records show Plaintiff taken to medical department following incident with Tracy and a "vest").  There is a dispute as to when the middle finger incident occurred and Plaintiff himself provides conflicting dates.  *Compare id.* ¶ 63 (Smith's handwritten notes dated May 2018 describe the middle finger incident), *with id.* ¶ 68 (Smith testified during deposition that safety vest incident and middle finger incident happened six months apart).

[5] As an example, Plaintiff was asked on one occasion to fill in when GM was low on manpower.  However, he stated the incident had nothing to do with his race or racial discrimination but instead, he thought it was "unfair" that he was being asked to perform other job duties.  Doc. [52] ¶ 85–89 (citing Doc. [52-20] at 73–74 (73:8–74:4)).

[6] Plaintiff did not file his discrimination, harassment, or hostile work environment claims in this lawsuit based on the swastika.

4

against him for "snitching" when he reported the swastika. *See* Doc. [52] ¶¶ 69, 75, 99. The alleged retaliatory acts included an increased workload, verbal warnings, excessive monitoring, cussing, and public admonishing. *See, e.g., id.* ¶ 78 (Thornhill asked Plaintiff to haul empty containers alone on one occasion following reporting of swastika);[7] *id.* ¶ 104 (Thornhill regularly cussed at Plaintiff while working); *id.* ¶ 99 (Thornhill and/or Bold gave Plaintiff verbal warnings and/or notice[8] for not finishing his work); *id.* ¶¶ 90–99 (Bold asked Plaintiff to unload a truck by himself in retaliation for reporting swastika);[9] Doc. [52-20] at 249–51 (249:9–251:16) (Plaintiff explaining Thornhill and Bold "dual supervised" him).

Plaintiff was never disciplined as a result of reporting any workplace conduct or concerns to GM. Doc. [52] ¶ 138. In fact, Plaintiff's employment record has no discipline noted on it at all. *Id.* Plaintiff was never demoted or transferred to a position with lesser pay and he has continued to receive all compensation and benefits due to him. *Id.* ¶¶ 139–40.

On June 15, 2019, Plaintiff filed a Charge of Discrimination ("Charge")[10] with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Missouri Commission on Human Rights ("MCHR"). Doc. [52-13]; Doc. [52] ¶ 125. In March 2020, Plaintiff filed a four-count action against GM under the MHRA for harassment (Count I), hostile work environment (Count II), employment discrimination (Count III), and retaliation (Count IV).

---

[7] Plaintiff admits collecting the empty containers while the team was waiting on the next truck to arrive was something all employees are required to do; both black and white employees alike were asked to do the task. Doc. [52] ¶ 81 (citing Doc. [52-20] at 143–44 (143:18–144:2)).

[8] Being "put on notice" is not reflected on an employee's disciplinary record and results in no tangible change in employment terms or conditions. Doc. [52] ¶¶ 100–02.

[9] When asked at his deposition if Plaintiff felt he was asked to do the extra work because he is black and his co-worker was white, Plaintiff responded "No, ma'am, I wouldn't say that." Doc. [52] ¶ 97 (citing Doc. [50-20] at 77 (77:12–15).

[10] In his Charge, Plaintiff included the safety vest incident and other complaints about Tracy. Doc. [52-13]. Plaintiff also mentioned he was forced to work other jobs during staff shortages. Plaintiff then generically complained that he had suffered harassment, bullying, and retaliation from his supervisor and other employees.

Doc. [5].  In the current Motion, GM moves for summary judgment on all four counts.  Doc. [51].

## II.     LEGAL STANDARD

A claim of unlawful discrimination may be established through direct or indirect evidence.  Because Plaintiff's claim is not based on any direct evidence of discrimination, the Court will apply the *McDonnell Douglas* burden-shifting analysis.  Mo. Rev. Stat. § 213.101.3 (stating "the court shall consider the burden-shifting analysis of *McDonnell Douglas* . . . to be highly persuasive for analysis in cases not involving direct evidence of discrimination"); *Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 166 (Mo. Ct. App. 2021) ("Like federal courts, Missouri courts use the burden-shifting analysis developed in *McDonnell Douglas* . . . to evaluate proof in discrimination cases where disparate treatment is alleged.").  When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law.  *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 22 (Mo. banc 2019) ("When reviewing cases under the [MHRA, courts] are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law.").

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first demonstrate a *prima facie* case of discrimination; then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action; finally, if Defendant offers such a reason, the burden shifts back to Plaintiff to show the proffered reason is merely a pretext for discrimination.  *Eivins*, 636 S.W.3d at 166–67.  If Plaintiff fails to make a *prima facie* case, the Court grants summary judgment.  *See, e.g.*, *M.W. by & though K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 419 (Mo. Ct. App. 2020) (affirming summary judgment in favor of employer when plaintiff failed to present sufficient evidence from which a factfinder could find necessary elements of her *prima facie* discrimination claim) (Ransom, J.); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986) (explaining if Plaintiff fails to make a sufficient showing on an essential element of her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law").

The Court views any genuine factual disputes in the light most favorable to Plaintiff, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and will grant summary judgment only if evidence could not support any reasonable inference for Plaintiff.  *Hilde v. Cty. of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) ("[I]f the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  Despite this deferential standard, Plaintiff will not withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [his] own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007); *see also Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 799 (Mo. Ct. App. 2018) (explaining an "inference" of discrimination is not raised by a "plaintiff's general, conclusory allegations and opinions" (quoting *Palesch v. Mo. Comm'n on Hum. Rts.*, 233 F.3d 560, 570 (8th Cir. 2000)).  For reasons discussed below, the Court concludes Plaintiff has not met his burden for any of his claims at the *prima facie* stage.

## III.   DISCUSSION

### A.  <u>**Plaintiff's Claims Based on Acts Prior to December 18, 2018, are Time-Barred**</u>

The first issue is whether Plaintiff's claims are time-barred.[11]  To bring an action under the MHRA, a plaintiff must first exhaust his administrative remedies by filing a Charge of Discrimination ("Charge") with the Missouri Human Rights Counsel ("MHRC") within 180 days of the alleged discriminatory act.  Mo. Rev. Stat. § 213.075.1.  Failure to timely file a Charge is a "complete defense," requiring dismissal of the allegations related to that charge.  *Id.*; *see also L.B. v. Jefferson City Sch. Dist.*, 833 F. App'x 40, 42 (8th Cir. 2021).  Plaintiff filed his Charge on June 15, 2019.  Doc. [52-13].  Thus, all acts occurring *on or after* December 18, 2018, are timely because they fall *within* the 180-day limitations period.

However, majority of the discriminatory acts alleged by Plaintiff originated *before* December 18, 2018, and are thus untimely as the acts fall *outside* the limitations period.  Claims based on these untimely acts could survive, however, if they fall under the "continuing violation doctrine."  *See Gill v. City of St. Peters*, 641 S.W.3d 733, 739 (Mo. Ct. App. 2022); *see also Rowe v. Hussmann Corp.*, 381 F.3d 775, 782 (8th Cir. 2004) ("Missouri courts have concluded that application of MHRA's 180–day statute of limitations is subject to equitable exceptions, including the continuing violation doctrine."); *Bozue v. Mut. of Omaha Ins. Co.*, 536 F. Supp. 3d 438, 449 (E.D. Mo. 2021) (applying the continuing violation doctrine).  "Under the continuing violation theory, a plaintiff may pursue a claim for an act that occurred outside the filing period if he can demonstrate the act is part of an ongoing pattern or practice of discrimination by the employer."

---

[11] Defendant argued Plaintiff's claims are time-barred because Plaintiff filed his Charge on June 15, 2019 and listed on the Charge that the latest discrimination occurred almost two years before on June 8, 2017. Doc. [53] at 9–11. Plaintiff stated he committed a "typographical error" and that he "intended to state that the latest date of discrimination took place on June 8, *2019*," not 2017. Doc. [59] at 4 (italics added). Viewing the facts in a light most favorable to Plaintiff, the Court accepts Plaintiff's argument that he made a typographical error because Plaintiff specifically referenced acts in the Charge that occurred in 2018 (e.g.: safety vest) and also stated in the Charge that he continued to experience discrimination/retaliation at least up to the time that he filed his Charge in 2019. *See* Doc. [52-13].

8

*Gill*, 641 S.W.3d at 739 (citing *Plengemeier v. Thermadyne Indus.*, 409 S.W.3d 395, 401 (Mo. Ct. App. 2013)). The continuing violation doctrine requires (1) at least one discriminatory act within the 180-day limitations period and (2) a "show[ing] that the current claim of discrimination is part of 'a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination.'" *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. Ct. App. 2012) (quoting *Pollock v. Wetterau Food Distrib. Grp.*, 11 S.W.3d 754, 763 (Mo. Ct. App. 1999)).

Plaintiff satisfies the first element of the continuing violation doctrine because he alleged incidents that occurred within the 180-day limitations period—i.e.: incidents that occurred on or after December 18, 2018. *See, e.g.*, Doc. [5] ¶ 42 & Doc. [52] ¶¶ 69, 75, 78, 99 (alleging Thornhill and Bold retaliated against Plaintiff after he reported swastika graffiti on or around June of 2019). To satisfy the second element of the continuing violation doctrine, as discussed *supra*, Plaintiff must show that the timely and untimely acts are part of "a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination." *Tisch*, 368 S.W.3d at 252. In other words, the timely acts—conduct by Bold and Thornhill—must be "sufficiently related" to the acts that occurred outside of the limitation period. *Bozue*, 536 F. Supp. 3d at 449 (quoting *Rowe*, 381 F.3d at 782).

The alleged untimely acts concern the conduct of other GM employees such as Laura, Tracy, Admire, and Booth. *See, e.g.*, Doc. [52-13] (Tracy threw a safety vest at him); Doc. [52-20] at 112 (112:3–22) (Tracy threatened to "make something up" to get Plaintiff disciplined or fired); *id.* at 233 (233:4–11) (Tracy showed Plaintiff her middle finger); *id.* at 52 (52:18–23) (Laura threatened to get Plaintiff fired if Plaintiff asked her for a box cutter while working); *id.* at 191–92 (191:13–192:15) (employee Booth retaliated against Plaintiff for reporting Laura); *id.* at 219 (219:1–8) (Booth harassed and threatened Plaintiff in May 2017); *id.* at 70–73 (70:20–73:17)

9

(employee Admire made Plaintiff perform another employee's job when Defendant was low on power).  On the other hand, the *timely* acts concern Plaintiff's supervisors, mainly Thornhill and Bold, who allegedly retaliated against Plaintiff by asking Plaintiff to unload a truck and haul empty containers alone, giving Plaintiff verbal warnings for not finishing his work, excessively monitoring Plaintiff while he was working, and cussing at Plaintiff throughout his employment.

Plaintiff cannot show a pattern of "interrelated events" involving "repeated conduct" that would "connect" the untimely discriminatory acts to the discriminatory acts within the statutory period.  *Bozue*, 536 F. Supp. 3d at 450.  The untimely acts did not occur "within the same general time period" or "stem from the same source" that "continued into the limitations period."  *Tisch*, 368 S.W.3d at 254.  Notably, the untimely acts concern different supervisors and different conduct than the timely acts.  *See, e.g.*, *Kovach v. MFA, Inc.*, 2:21-cv-00013-SEP, 2021 WL 4125048, at *4 (E.D. Mo. Sept. 9, 2021) (finding a continuing violation where the verbal harassment was from the "same harasser . . . committing the same harassing acts"); *see also Chambers v. Padda*, 4:20-cv-01617-SEP, 2022 WL 898784, at *6 (E.D. Mo. Mar. 28, 2022) ("the same individual . . . allegedly committed all of the harassing acts before and after October 5, 2018," and the plaintiff alleged "several sexual assaults connected by periods of other sexual harassment").  Plaintiff failed to point to a series of "interrelated events" that would bring the earlier discriminatory acts within the filing period.  *Gill*, 641 S.W.3d at 740.  As a result, Plaintiff cannot avail himself of the continuing violation theory and his claims based on acts that occurred *before* December 18, 2018, are time-barred.[12]

---

[12] The Court also concludes Plaintiff exhausted his hostile work environment claim because, "liberally" construing his Charge, the allegations were sufficient to put Defendant on notice that an investigation into a claim for hostile work environment "could reasonably be expected to grow out of the charge of discrimination."  *See Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) (quoting *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 525 (Mo. Ct. App. 2009)).

10

B. **Plaintiff Cannot Meet His *Prima Facie* Burden and Defendant is Entitled to Summary Judgment as a Matter of Law**

As discussed *supra*, the *pre*-December 2018 incidents are untimely and cannot form the basis of Plaintiff's claims. As to any *post*-December 2018 incidents, which largely concern the conduct of Thornhill and Bold, the Court now analyzes the merits of each of Plaintiff's claims based on the acts that occurred on or after December 18, 2018.[13] As discussed below, the Court finds Plaintiff cannot meet his burden at the *prima facia* stage for his claims of harassment, discrimination, hostile work environment, and retaliation because Plaintiff cannot establish any adverse employment action or that the alleged conduct was based on his race.

1. **Plaintiff Does Not Establish Adverse Employment Action**

To establish a *prima facie* claim for race discrimination and retaliation under Missouri law, Plaintiff must show, *inter alia*, the alleged discriminatory act "had some adverse impact" on Plaintiff "before it becomes actionable." *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019); *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) (retaliation under the MHRA); *see also Shore v. Children's Mercy Hosp.*, 477 S.W.3d 727, 732 (Mo. Ct. App. 2015) (affirming summary judgment for employer where plaintiff did not show any term or condition of employment that was denied). To satisfy this requirement, Plaintiff must demonstrate "a significant change in employment status." *Williams v. True Mfg.*, 4:14-cv-1609-HEA, 2015 WL 4546618, at *3 (E.D. Mo. July 28, 2015) (analyzing MHRA claim). A significant change in employment occurs when "compensation, terms, conditions, or privileges of employment were

---

[13] The Court notes that Plaintiff failed to allege any incidents of harassment or discrimination that are within the limitations period, as Plaintiff states Thornhill's and Bold's conduct—the timely acts—was in *retaliation* for reporting the swastika. On this basis alone, Defendant could be entitled to summary judgment on Plaintiff's claims for harassment (Count I) and discrimination (Count III), as those claims are based on acts that are time barred, as discussed in Section III(a) of this Memorandum and Order. Nonetheless, the Court explains in this Memorandum and Order why Counts I and III fail for other reasons, too.

negatively affected." *Bram*, 564 S.W.3d at 796.  During the relevant time before the Court—acts occurring on or after December 18, 2018—Plaintiff cannot show a single adverse action that caused a material change in his employment status.  Plaintiff did not experience any cut in pay or benefits, he was not subjected to a significant change in job responsibilities, nor were any future career prospects or pay negatively affected.

Plaintiff makes several arguments in claiming adverse employment action, none of which are persuasive.  Plaintiff argues verbal warnings and "increased reprimands" constitute adverse employment actions.  Doc. [59] at 14.  But undisputed evidence shows these had no disciplinary effects and did not impact any term or condition of his employment.  Doc. [52] ¶ 100–02. "[F]ormal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action."  *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) (finding no material change in employment where management gave an employee three written reprimands, but there was no corresponding decrease in pay, hours, or any other significant change); *Anderson v. Dillard's Inc.*, 109 F. Supp. 2d 1116, 1127 (E.D. Mo. 2000) (rejecting "Plaintiff's assertion that a verbal reprimand is an adverse employment action"); *Clayton v. DeJoy*, 4:18-cv-01039-JAR, 2020 WL 6822641, at *6 (E.D. Mo. Nov. 20, 2020) (explaining that "discrete reprimands with no associated effect on Plaintiff's tangible working conditions, do not rise to the level of an adverse employment action").  Similarly, Thornhill's alleged regular cussing at Plaintiff is not actionable because "personal animus, hostility, disrespect, and ostracism" do not rise to the level of an adverse employment action.  *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 2002); *see also Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999) (explaining "ostracism and disrespect" by supervisor did not rise to the level of an adverse employment action).

Plaintiff next points to his increased workload. But these changes are not actionable as they were temporary and did not significantly disadvantage Plaintiff. *See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) ("[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action."); *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 868 (8th Cir. 2003) (affirming summary judgment in favor employer where supervisor changed employee's hours and job duties but "many of the actions were only temporary or not materially significant"); *Clayton*, 2020 WL 6822641, at *6 ("A reasonable factfinder could not conclude that Plaintiff's temporary reassignments constituted adverse employment actions."); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) (stating that "minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not" rise to the level of an adverse employment action). Plaintiff also noted excessive monitoring. Doc. [59] at 14–15. While it is not totally clear who Plaintiff is alleging excessively monitored him, such conduct is not actionable here under any circumstances. *See Forest v. Barnes-Jewish Hosp.*, 4:04-cv-686-DJS, 2006 WL 1300611, at *7 (E.D. Mo. May 10, 2006) (explaining increased scrutiny, without additional disciplinary action such as a change in grade, salary, or other benefits, does not constitute adverse employment action).

Finally, Plaintiff argues the workplace harassment and discrimination he endured reduced his wages by forcing him to miss work. Doc. [59] at 12, 14. While some of the complained of acts *may* have caused a material change in Plaintiff's employment on this basis, those acts are time barred.[14] As to missing work during the relevant period—where Plaintiff twice took an approved

---

[14] For example, Plaintiff had an approved medical leave of absence due to anxiety and stress following the incident with Tracy and the safety vest. Doc. [52] ¶¶ 24–25 (citing Doc. [52-18]).

13

medical leave of absence due to anxiety and stress[15]—the record is devoid of any evidence that connects the alleged medical condition to his employment with Defendant. Moreover, nothing on this record even supports Plaintiff's argument that he "missed wages" during the approved leaves.

In conclusion, because there is no evidence of an adverse employment action, the Court grants summary judgment in favor of Defendant on Plaintiff's race discrimination (Count III) and retaliation claims (Count IV). *See Ressler v. Clay Cnty.*, 375 S.W.3d 132, 141 (Mo. Ct. App. 2012) (explaining a *prima facie* case for summary judgment can be established by showing undisputed facts negate *any one* of the plaintiff's required proof elements).

### 2. **Plaintiff Does Not Establish the Alleged Conduct was Based on his Race**

To establish a *prima facie* case for racial harassment, discrimination and hostile work environment under Missouri law, Plaintiff must show the at-issue conduct was based on a protected characteristic—here, Plaintiff's race. *McGaughy*, 604 S.W.3d at 748 (hostile work environment claim requires "harassment [] based on a protected characteristic"); *Lehr v. Nike IHM, Inc.*, 4:19-cv-942-RLW, 2021 WL 1611720, at *12 (E.D. Mo. Apr. 26, 2021) (harassing actions must be "based on the plaintiff's race" to constitute race discrimination (citing *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005))); *see also* Mo. Rev. Stat. § 213.055.1(1)(a) (MHRA prohibiting employment discrimination on the basis of race). Plaintiff has not pointed to any direct or indirect evidence showing the timely conduct was based on his race or any discriminatory animus.

The undisputed facts show the timely acts presently before the Court are unrelated to Plaintiff's race. Plaintiff *himself* states that any increases in his workload were *not* related to his race. *See, e.g.*, Doc. [52] ¶¶ 85–89 (Plaintiff acknowledging a task assignment was unfair as

---

[15] Plaintiff was off work on an approved medical leave of absence due to anxiety and stress from October 28, 2019 to December 8, 2019 and July 13, 2020 to January 19, 2021. Doc. [52] ¶¶ 27, 30.

opposed to race related); *id.* ¶ 97 (Plaintiff stating he was *not* asked to do extra work because he is black and his counterpart was white). In fact, Plaintiff states majority of Thornhill's and Bold's conduct was in *retaliation* for reporting the swastika—not based on discrimination or any racial animus. *See* Doc. [52] ¶ 75 (Plaintiff alleging Thornhill and Bold retaliated against Plaintiff because Plaintiff reported the swastika); *id.* ¶ 99 (Plaintiff stating that he was put on notice for reporting the swastika).

As to the cussing and public admonishing, Plaintiff explained all his allegations related exclusively to Thornhill.[16] Doc. [52] ¶ 104. Yet, Plaintiff admitted Thornhill never brought up race, used a racial slur, nor did anything racially derogatory toward Plaintiff. Thus, Thornhill's cussing is not actionable. *Fuchs v. Dep't of Revenue*, 447 S.W.3d 727, 733 (Mo. Ct. App. 2014) (explaining actionable harassment is "*discriminatory* intimidation, ridicule, and insult" (quoting *Palesch*, 233 F.3d at 566) (emphasis added)).

Nor can Plaintiff show racial harassment or discrimination vis-à-vis disparate treatment. *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013) (explaining a plaintiff may "satisfy the fourth part of the prima facie case . . . by showing more-favorable treatment of similarly-situated employees who are not in the protected class"). Under a disparate treatment theory, Plaintiff bears the burden of establishing he and the white employees are "similarly situated in all relevant respects." *McGhee v. Schreiber Foods, Inc.*, 502 S.W.3d 658, 667 (Mo. Ct. App. 2016); *see also Cox v. Kan. Cty. Chiefs Football Club, Inc.*, 473 S.W.3d 107, 119–20 (Mo. banc 2015) (explaining a disparate treatment plaintiff must show she was "treated differently from similarly situated members of the unprotected class"). Even assuming Plaintiff was treated

---

[16] And, to any allegations of "public admonishment," the Court notes Plaintiff specifically tied that to issues unrelated to race. *See* Doc. [59] at 15 (discussing in Opposition Brief that Plaintiff was "admonished publicly for his use of FMLA for his anxiety").

15

differently than other white employees[17]—which the Court does not find on this record—the only evidence in the record as to whether the white employees were similarly situated is Plaintiff's own, self-serving deposition testimony, which is insufficient to support a disparate treatment claim. *See Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 730 (8th Cir. 2019) ("An unsupported, self-serving allegation that another employee was similarly situated is insufficient"). Nor do Plaintiff's references to other employees as his "counterparts," see, e.g., Doc. [57] ¶ 35 & Doc. [52-20] at 149 (149:8–18), provide the "'specific, tangible evidence' of at least one other employee who was 'similarly situated in all relevant respects.'" *Said v. Mayo Clinic*, 44 F.4th 1142, 1148 (8th Cir. 2022) (quoting *Rinchuso*, 944 F.3d at 730). These bare assertions are insufficient to meet the "rigorous" standard required here. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (describing the "rigorous" test to show employees are similarly situated for disparate treatment). As such, Plaintiff cannot show race-based harassment or discrimination under a disparate treatment theory. *See, e.g.*, *Philip v. Ford Motor Co.*, 413 F.3d 766, 767–69 (8th Cir. 2005) (affirming summary judgment for defendant where black employee worked at motor vehicle assembly plant and presented evidence that disparate treatment occurred but not whether relevant employees were similarly situated).

In general, Plaintiff offers only speculation that any of the complained of conduct was on account of or motivated by his race, as opposed to personal animosity or other reasons not related to a protected category. He does not cite to any record evidence or provide admissible or probative evidence to support his assertions or substantiate his allegations. This is insufficient to withstand summary judgment. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008)

---

[17] The Court notes many of Plaintiff's cited incidents deal with the specific treatment of Plaintiff individually and not treatment to other members of the protected class. *Gill v. Cty. of St. Peters*, 641 S.W.3d 733, 743 (Mo. Ct. App. 2022) (finding action that impacted plaintiff individually rather than black people as a protected class is insufficient to show disparate treatment).

16

(explaining that "to avoid summary judgment, the nonmoving party must submit more than unsupported self-serving allegations" and instead, "must provide sufficient probative evidence to allow the nonmoving party to prevail"); *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (explaining to "survive" a motion for summary judgment the plaintiff must "substantiate" his discrimination allegations with "sufficient probative evidence" that would permit a finding in his favor based on more than "mere speculation").  Beyond his own conclusory allegations, Plaintiff completely failed to put forth any tangible evidence that he was discriminated or harassed based on his race.  Despite Plaintiff's belief to the contrary, see, e.g., Doc. [59] at 10, "general allegations are not 'sufficient, specific evidence of disparate treatment to survive summary judgment.'" *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (quoting *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 524 (8th Cir. 2010)).  Because Plaintiff has not pointed to any direct or indirect evidence showing the alleged acts were based on his race or any discriminatory animus, Defendant is entitled to summary judgment on Counts I–III as a matter of law.

## CONCLUSION

Even when viewing the evidence and inferences in the light most favorable to Plaintiff, the Court finds no genuine issues of material fact exist regarding his claim for race discrimination, retaliation, and hostile work environment.  On the undisputed facts, Plaintiff cannot meet his *prima facie* burden for all his claims under the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [51], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion To Deem Admitted All Facts In

Defendant's Statement Of Uncontroverted Material Facts Pursuant To Rule 56(E) And To Strike Plaintiff's Unsupported Facts, Doc. [62], is **GRANTED**.  The Clerk of Court is directed to strike Plaintiff's facts, Doc. [57], from the record.

Dated this 3rd day of February, 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE